# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  59925-2-II |
| Respondent, | |
| v. | |
| SHMUEL SARLIKER, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Following a jury trial, Shmuel Sarliker appeals his conviction for first degree criminal trespass.  Sarliker argues that the State failed to prove that he knew entering or remaining in Robert McConkey's trailer was unlawful based on his history of entering the trailer.  Because the nature of Sarliker's entry into McConkey's trailer was different than prior occasions and because Sarliker remained in McConkey's trailer to assault McConkey, a reasonable trier of fact could find that Sarliker knew entering or remaining in McConkey's trailer was unlawful.  Accordingly, we affirm Sarliker's conviction for first degree criminal trespass.

FACTS

A.      BACKGROUND

McConkey owns property on Trosper Road in Tumwater.  There is a structure on the property, but McConkey lives in a fifth wheel trailer on the property.  Sarliker lived in the separate structure and had been McConkey's tenant for approximately five years.

McConkey and Sarliker generally had a friendly relationship. Sarliker would step inside McConkey's trailer to visit with McConkey if the trailer door was open and McConkey was present.

On May 26, 2023, around 2:30 a.m., McConkey, then 91 years old, called 911 requesting aid. McConkey told the 911 operator that his neighbor was "beating on [him]." 2 Verbatim Rep. of Proc. (VRP) (Aug. 13, 2024) at 295. Several police officers responded. When the officers arrived at the property, they heard yelling from a "blue residence" on the property where Sarliker lived. 2 VRP (Aug. 13, 2024) at 226. Officers went there first.

Sarliker answered the door. Officers noted Sarliker had "blood splatter all over . . . his shirt [and] on his face." 2 VRP (Aug. 13, 2024) at 226. He had also wrapped one of his hands, which had been bleeding from a cut, in a towel. Sarliker was loud and agitated, and told the officers "that he had just fought his neighbor and that he was teaching him a lesson on who he was dealing with" because his neighbor had pulled a knife on him. 2 VRP (Aug. 13, 2024) at 227.

Officers then contacted McConkey inside McConkey's trailer. The entrance to McConkey's trailer has two doors: a screen door and an outer opaque door. When the officers arrived, the outer door was open while the screen door was shut. McConkey was sitting in a chair and was covered in blood. McConkey's face had "significant lumps, bleeding" and swelling, and his "left eye appeared . . . pretty swollen, drooping." 2 VRP (Aug. 13, 2024) at 231, 232. An officer also observed a pocketknife on a shelf next to McConkey that appeared to be within McConkey's reach. The pocketknife had blood on both the handle and the blade.

After talking with both Sarliker and McConkey, law enforcement determined that Sarliker was the primary aggressor and placed him under arrest. Both McConkey and Sarliker were

transported to the hospital. McConkey suffered lacerations and significant bruising to his face, which required several stitches and staples. McConkey also had a fractured nasal bone and was admitted to the hospital for observation.

An officer drove Sarliker to the hospital. After Sarliker was advised of his *Miranda*[1] rights, Sarliker volunteered to the officer that he had punched and headbutted McConkey, "that he was glad that law enforcement arrived," and "it was a good decision" to arrest him. 2 VRP (Aug. 13, 2024) at 242.

B.    PROCEDURAL HISTORY

The State charged Sarliker with second degree assault and second degree burglary. The matter proceeded to a jury trial. Both McConkey and Sarliker testified.

1.    McConkey's Testimony

McConkey testified that in early morning of May 26, 2023, he had been asleep in his recliner. Suddenly, the door slammed open and someone began "pounding on [McConkey's] face and screaming at [him]." 2 VRP (Aug. 13, 2024) at 276. According to McConkey, the person screamed, "'Die, die, die, die' over and over." 2 VRP (Aug. 13, 2024) at 278. McConkey recognized Sarliker's voice. Sarliker beat him for approximately one or two minutes. McConkey stated that he never touched the pocketknife during the incident with Sarliker.

McConkey also testified that his television is on 24 hours a day. He generally struggles with rising from his chair. Additionally, McConkey stated he does not keep any firearms in his trailer.

---

[1] *See generally Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Prior to the incident, Sarliker would stop by McConkey's trailer to visit. McConkey testified that it was not uncommon for Sarliker and other visitors to step inside McConkey's trailer if his door had been open during the day. However, it was not customary for visitors to enter McConkey's trailer during the night or if his door was closed.

2.    Sarliker's Testimony

Sarliker testified on the day prior to May 26, Sarliker and McConkey were working on a raccoon trap. The trap failed to work properly, and McConkey was upset with Sarliker. Then, late that night, Sarliker assisted another tenant, who was an electrician, to "connect some wiring" near McConkey's trailer. 3 VRP (Aug. 14, 2024) at 424. Afterwards, Sarliker noticed a light on in McConkey's trailer and that McConkey appeared awake, "standing watching TV." 3 VRP (Aug. 14, 2024) at 424.

McConkey's outer door was slightly ajar and his screen door was shut. Sarliker loudly called out, "'I come in peace,'" pushed open the outside door, opened the screen door, and entered the trailer. 3 VRP (Aug. 14, 2024) at 451. Sarliker said "'I come in peace'" because he knew McConkey had been upset about the failed raccoon trap. 3 VRP (Aug. 14, 2024) at 427. Once Sarliker stepped inside, he saw McConkey standing a couple feet away, facing him and holding a knife, pointed in Sarliker's direction. McConkey did not say anything to Sarliker.

According to Sarliker, McConkey took a step towards him. Sarliker, fearing that McConkey was going to stab him, pushed McConkey such that McConkey fell backwards into his chair. Then Sarliker punched McConkey in the face twice and headbutted him. Sarliker did not leave McConkey's trailer after pushing him down because he was worried that McConkey would shoot him with a rifle propped up near his front door. Sarliker stopped beating McConkey once

4

he saw the amount of blood and decided to go home. Sarliker stated that the police were already at his home when he arrived.

Sarliker also testified that he would go to McConkey's trailer often. McConkey had never had a problem when Sarliker had previously walked into McConkey's trailer.

### 3. Verdict and Sentencing

The jury found Sarliker guilty of second degree assault (Count I). The jury also found Sarliker guilty of first degree criminal trespass (Count II).[2] Sarliker was sentenced to 17 months on Count I and 364 days on Count II, with both sentences to be served concurrently, along with 18 months of community custody.

Sarliker appeals.

### ANALYSIS

Sarliker argues that the State failed to prove that he committed first degree criminal trespass.[3] Specifically, Sarliker asserts that the State failed to demonstrate that Sarliker knew entering or remaining in McConkey's trailer was unlawful based on his history of entering McConkey's trailer without objection from McConkey. We disagree.

### A. SUFFICIENCY OF THE EVIDENCE

In criminal prosecutions, the State must prove every element of a crime beyond a reasonable doubt. *State v. Roberts*, 5 Wn.3d 222, 230-31, 572 P.3d 1191 (2025); U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3. This court reviews challenges to the sufficiency of

---

[2] The jury had been instructed on first degree criminal trespass as a lesser included offense of second degree burglary.

[3] Sarliker does not challenge his second degree assault conviction on appeal.

evidence de novo. *State v. Zghair*, 4 Wn.3d 610, 619, 567 P.3d 1 (2025). When a claim of insufficient evidence is raised on appeal, we view the evidence in a light most favorable to the State and consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Dreewes*, 192 Wn.2d 812, 821-22, 432 P.3d 795 (2019). The defendant admits the truth of the State's evidence and all reasonable inferences are drawn in favor of the State. *Roberts*, 5 Wn.3d at 237; *Dreewes*, 192 Wn.2d at 821-22. Circumstantial and direct evidence are considered equally reliable. *Roberts*, 5 Wn.3d at 237.

B.    CRIMINAL TRESPASS

1.    Legal Principles

A person is guilty of first degree criminal trespass "if he or she knowingly enters or remains unlawfully in a building." RCW 9A.52.070(1). A person acts with knowledge if "[h]e or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense." RCW 9A.08.010(1)(b)(ii). To "enter or remain unlawfully" means to enter or remain upon premises where an individual is not "licensed, invited, or otherwise privileged to so enter or remain." RCW 9A.52.010(2). "Premises" includes any buildings or dwellings. RCW 9A.52.010(3).

It is a defense to criminal trespass if the defendant "reasonably believed that the owner of the premises, or other person empowered to license access thereto, would have licensed him or her to enter or remain." RCW 9A.52.090(3).

2.    Sufficient Evidence Supports Sarliker Knowingly Entered or Remained Unlawfully

Sarliker argues that based on his history of entering McConkey's trailer unannounced on prior occasions, Sarliker reasonably believed he could enter McConkey's trailer on May 26, 2023.

6

In support of his contention, Sarliker points to McConkey's trial testimony, in which McConkey testified that Sarliker had previously walked into his trailer unannounced.

However, the record shows that McConkey only allowed individuals to enter his trailer during the day if he was home and if the door was open. McConkey testified that Sarliker never came into his trailer at night. Furthermore, the record shows that the outer door to McConkey's trailer was mostly closed, and Sarliker had to push it open, then open the screen door, which had been fully closed, in order to enter the trailer. Thus, Sarliker's entry into McConkey's trailer at 2:30 a.m. on May 26 was different than Sarliker's past entries into the trailer. And McConkey did not invite Sarliker inside. Accordingly, because the nature of Sarliker's entry was different than past entries and because Sarliker did not have permission from McConkey to enter, the record shows that Sarliker did not possess a reasonable belief that he was permitted to enter McConkey's trailer. Therefore, a reasonable trier of fact could find that Sarliker unlawfully entered McConkey's trailer. RCW 9A.52.010(2); *Dreewes*, 192 Wn.2d at 821-22.

Moreover, even if Sarliker reasonably believed he was licensed to enter McConkey's trailer at 2:30 a.m., Sarliker cannot have reasonably believed he was licensed to remain in McConkey's trailer to assault McConkey. When the evidence is viewed in the light most favorable to the State, the record shows that almost as soon as Sarliker entered McConkey's trailer, before McConkey could say anything,[4] Sarliker punched McConkey in the face twice and headbutted him. And, when all reasonable inferences are viewed in favor of the State, a reasonable inference arises that

---

[4] There are conflicting accounts as to whether McConkey was asleep or awake, sitting or standing, or holding a knife or not. Ultimately, whatever McConkey's initial state may have been is a credibility determination for which we defer to the trier of fact and does not change our analysis. *Roberts*, 5 Wn.3d at 237.

No. 59925-2-II

McConkey did not give Sarliker permission to assault him. Therefore, even if Sarliker reasonably believed he was licensed to enter McConkey's trailer at 2:30 a.m., assaulting McConkey while in the trailer amounted to remaining unlawfully in the trailer.

Thus, based on evidence in the record, a reasonable trier of fact could find beyond a reasonable doubt that Sarliker entered or remained unlawfully in McConkey's trailer. RCW 9A.52.070(1). Accordingly, we affirm Sarliker's conviction for first degree criminal trespass.

CONCLUSION

We affirm Sarliker's conviction for first degree criminal trespass.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Glasgow, J.

Maxa, P.J.

8